UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| HMK ENTERPRISES, INC., ROBERT ACKERMAN and STEVEN KAROL, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 04-12688-MLW |
| THE CHUBB CORPORATION, FEDERAL INSURANCE COMPANY, CHUBB & SON, INC., | ) ) ) ) | |
| Defendants. | ) ) ) | |

## AMENDED COMPLAINT

Plaintiffs HMK Enterprises, Inc. ("HMK"), Robert Ackerman ("Mr. Ackerman") and Steven Karol ("Mr. Karol") (collectively, "the Insureds") bring this action for a judgment declaring that Defendants The Chubb Corporation, The Federal Insurance Company and Chubb & Son, Inc. (collectively, "Chubb" or "the Defendants") are obligated to provide insurance coverage, including indemnification and reimbursement of defense costs, to the Insureds in connection with a lawsuit brought against the Insureds in the United States Bankruptcy Court for the Northern District of Oklahoma. The Insureds also seek damages against Chubb for its breach of contract, breach of the duty of good faith and fair dealing, and its unfair and deceptive trade and insurance practices in violation of G.L. c. 93A and 176D, based on, among other things, its refusing to provide coverage for claims against the Insureds where insurance coverage was required, reversing its longstanding coverage position upon which the Insureds relied for over a year and taking these actions in bad faith and at a time and under circumstances designed to deter

the Insureds from pursuing the litigation because of the threat that their defense costs would not be covered and thus poisoning settlement efforts and coercing the Insureds into using their own money to settle the case at mediation. Ultimately, Chubb's tactics forced the Insureds to settle the Oklahoma case on far less favorable terms than they could have negotiated but for Chubb's conduct.

## PARTIES

1.      Plaintiff HMK Enterprises, Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 800 South Street, Waltham, Massachusetts.

2.      Mr. Ackerman is an individual residing in Boston, Massachusetts. Mr. Ackerman is the former Chief Executive Officer and a former director of Sheffield Steel, HMK's former subsidiary.

3.      Mr. Karol is an individual residing in Boston, Massachusetts. Mr. Karol is a former director of Sheffield Steel, HMK's former subsidiary.

4.      Defendant The Chubb Corporation, informally known as "the Chubb Group of Insurance Companies," was at all relevant times, and is, a corporation organized under the laws of the State of New Jersey, that is authorized to and does conduct business in the Commonwealth of Massachusetts, with its principal place of business located at 15 Mountain View Road in Warren, New Jersey.

5.      Defendant Federal Insurance Company ("Federal") was at all relevant times, and is, a corporation organized under the laws of the State of Indiana, that is authorized to and does conduct business in the Commonwealth of Massachusetts, with its principal place of business

2

located at 15 Mountain View Road in Warren, New Jersey. Federal is a wholly-owned subsidiary of, and a "principal member" of Chubb.

6.    Defendant Chubb & Son, Inc. ("Chubb & Son") was at all relevant times, and is, a corporation organized under the laws of the State of New York, that is authorized to and does conduct business in the Commonwealth of Massachusetts, with its principal place of business located at 15 Mountain View Road in Warren, New Jersey. Chubb & Son is a division of Federal. Chubb Corporation, The Federal Insurance Company and Chubb & Son, Inc. are referred to collectively as "the Defendants" or "Chubb".

## FACTS

7.    On or about September 25, 2002, Chubb issued Policy No. 8122-2404 ("the Policy") to HMK for the policy period September 1, 2002 to September 1, 2003. HMK is the Insured Organization under the Policy. The "Insured Persons" under the Policy are defined to include (1) "[a]ny person who has been, now is, or shall become a duly elected director or a duly elected or appointed officer of the Insured Organization . . . [and] [a]ny past, present or future director, officer of the Insured Organization; and (2) the Insured Organization . . . and its subsidiaries."

8.    Sheffield Steel Corporation ("Sheffield") is an Oklahoma corporation. On December 7, 2001, Sheffield filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Oklahoma. On July 26, 2002, the Bankruptcy Court confirmed the "Second Amended and Restated Joint Plan of Reorganization" ("the Plan"), which became effective on August 14, 2002. Sheffield emerged from bankruptcy as Reorganized Sheffield. Prior to its bankruptcy filing, Sheffield was a subsidiary of HMK.

3

9.     Mr. Ackerman was, at all times relevant to this lawsuit, the Chief Executive Officer and a director of Sheffield.

10.     Mr. Karol was, at all times relevant to this lawsuit, a director of Sheffield.

11.     After the Plan was confirmed, on July 10, 2003, Reorganized Sheffield commenced an Adversary Proceeding in the Northern District of Oklahoma Bankruptcy Court against the Insureds styled as *Sheffield Steel Corporation v. HMK Enterprises, Inc., Steven E. Karol and Robert W. Ackerman*, No. 03-0134. The Adversary Complaint was in four counts, including Avoidance and Fraudulent Transfer under the Oklahoma Uniform Fraudulent Transfer Act (OUFTA) section 117 against the Insureds (Count I), Avoidance and Fraudulent Transfer under the OUFTA section 116 against the Insureds (Count II), Improper Dividend against Mr. Ackerman and Mr. Karol as directors of Sheffield (Count III), and Improper Dividend against the Insureds as shareholders of Sheffield (Count IV).

12.     The Insureds' counsel immediately notified Chubb of the Adversary Proceeding, sent Chubb a copy of the Adversary Complaint and requested that Chubb honor its obligations under the Policy.

13.     Chubb initially denied coverage, claiming that the Plaintiff in the Adversary Proceeding (Reorganized Sheffield) was an Insured under the Policy and that thus the Policy's "insured versus insured" exclusion applied. Chubb's position was entirely meritless. The Insureds, through counsel, demonstrated to Chubb that Reorganized Sheffield is not an HMK subsidiary and thus is not an Insured under the Policy and eventually Chubb reversed its meritless position on the "insured versus insured" exclusion. Chubb, however, refused to reimburse the Insureds for legal costs incurred in connection with its wrongful and meritless assertion of the "Insured versus Insured" exclusion.

4

14.     Thereafter, the Insureds' counsel wrote to Chubb concerning the availability of coverage under an additional Insuring Clause of the Policy.  Chubb responded by letter, raising only three specific issues, which were reserved and later resolved, and otherwise acknowledged coverage.

15.     Chubb approved the Insureds' retention of lead defense counsel and of local counsel in Oklahoma, agreed to provide coverage for the claims asserted in the Adversary Proceeding, agreed to pay all defense costs, and commenced paying defense costs.  While Chubb stated generally, and vaguely that coverage was subject to the Policy terms and conditions, it did not indicate that it believed that any of the claims set forth in the Adversary Complaint would not be covered, never asserted that there would be or was any basis for any allocation of defense costs for uncovered versus covered claims or that the Policy would not cover HMK as an Insured Organization in connection with the claims asserted by Reorganized Sheffield (and instead expressly stated Chubb would provide coverage to HMK).

16.     On December 5, 2003, in response to the Insureds' Motion to Dismiss the Adversary Complaint, Reorganized Sheffield filed its First Amended Adversary Complaint ("the Amended Complaint").  The Amended Complaint retained the four counts that were included in the Adversary Complaint and added five additional counts:  Count V for Disallowance of Claim against the Insureds, Count VI against HMK for alleged indebtedness, Count VII against Mr. Ackerman and Mr. Karol as directors for breach of fiduciary duty, Count VIII against Mr. Ackerman for Avoidance and Recovery of Fraudulent Transfers under OUFTA section 117 and Count IX against Mr. Ackerman for Avoidance and Recovery of Fraudulent Transfers under OUFTA section 116.

17.    The Insureds, by their counsel, immediately notified Chubb of the Amended Complaint and provided a copy of the Amended Complaint to Chubb.  At all times, the Insureds and their counsel kept Chubb fully informed of status of the Adversary Proceeding, sent copies of court papers to Chubb and sought approval for specific actions undertaken by the Insureds and their counsel in connection with the defense of the Adversary Proceeding.  Furthermore, in the context of initial meetings with Plaintiff's counsel in the Adversary Proceeding, and with Chubb's prior approval, the Insureds' counsel revealed the Policy limits to counsel for Reorganized Sheffield and represented its availability and applicability to the claims in the Complaint.

18.    After receiving the Amended Complaint, with the full knowledge and approval of Chubb, the Insureds filed a Motion to Dismiss certain counts of the Amended Complaint and separately filed a Motion for Summary Judgment on each and every count of the Amended Complaint.  Chubb also approved and paid for investigation and filing of an indemnification action against Sheffield.

19.    While the Motion to Dismiss and Motion for Summary Judgment were pending, the parties to the Adversary Proceeding discussed the possibility of mediation.  The Insureds' counsel immediately notified Chubb and was told that the matter had been transferred to a new claims specialist.    The new claims specialist explicitly approved of (and indeed himself suggested) the idea of mediation and, in late September or early October, the parties scheduled mediation for November 10, 2004, in Tulsa, Oklahoma before a retired federal judge as mediator.  Mr. Ackerman, Mr. Karol and their counsel made travel arrangements to fly to Tulsa with the full knowledge and approval of Chubb.  The Insureds' counsel coordinated scheduling with local counsel and with the Chubb claims specialist.

20.    Shortly before the scheduled mediation, the new claims specialist requested a
copy of the Amended Complaint, as though Chubb had not received it nearly a year earlier.  The
Insureds immediately provided Chubb with the Amended Complaint (for the second time).

21.    Approximately one week before the planned and scheduled mediation and despite
the fact that Chubb had not indicated that it believed that any of the claims of the Amended
Complaint were not covered, that it might change its coverage position, or that it would insist on
any allocation of defense costs, and despite the fact that Chubb had indicated exactly the
opposite for more than a year, in an astonishing reversal of its coverage position, Chubb flatly
denied coverage for seven of the nine counts of the Amended Complaint, denied coverage to
HMK altogether, denied that there was coverage beyond defense costs for the two remaining
claims and indicated that defense costs must be allocated between the two claims it deemed
covered and the other claims.  Chubb's reversal of its coverage position came after the Insureds
had for more than a year relied upon Chubb's coverage position and had, among other things,
with Chubb's knowledge and assent, disclosed the available insurance limits to Sheffield.

22.    Indicative of its bad faith attempts to revise, reverse and avoid its long-standing
coverage position, upon which the Insureds had reasonably, materially and detrimentally relied,
Chubb indicated that it was outlining coverage for the claims in the Amended Complaint having
"recently" received and reviewed the Amended Complaint and Summary Judgment papers.  To
the contrary, and as documented in e-mail exchanges between the Insureds' counsel and the
original Chubb claims specialist assigned to the claim, Chubb had had the Amended Complaint
for nearly a year and had the opportunity to review the Amended Complaint before the Insureds
shaped significant portions of their defense of the Adversary Proceeding in reliance upon
Chubb's statements and its provision of coverage after it had initially received the Amended

Complaint.  As well, Chubb was aware of the representations about coverage made to opposing counsel and the expectations and dynamics this had created for a substantial period of time including, without limitation, with regard to the already scheduled mediation.  Chubb's actions were in bad faith and designed and timed to coerce its Insureds to use their own money to settle the case at the mediation.

23.    On November 10, 2004, the parties engaged in mediation in Oklahoma.  Going into the mediation, the Insureds believed that they could reach a settlement within the remaining Policy limits.  Despite demand by the Insureds and their counsel, however, Chubb refused to participate in the mediation in good faith and instead continued wrongfully to disclaim coverage during the mediation and threaten the Insureds that future defense costs would be apportioned despite no reservation of this issue ever, and despite Chubb's payment of all defense costs without allocation for over a year.  Chubb's bad faith actions were designed to deter the Insureds from pursuing the litigation and to coerce them into using their own money at the mediation.

24.    During the course of the mediation, the Insureds repeatedly demanded that Chubb make available the remaining limits of the Policy for use by the Insureds to settle the case with Sheffield.  Chubb refused.  The claims specialist present for Chubb also refused upon demand even to provide the name of his supervisor, to whom he was apparently speaking during the course of the mediation, or to allow the Insureds, their counsel or the mediator speak to his supervisor.  Despite that they had no obligation to do so, because Chubb refused to allow the Insureds to use any reasonable portion of the Policy limits to attempt to settle the Adversary Proceeding, in a good faith attempt to advance the settlement discussions, the Insureds proposed a number of alternatives that would have required them to contribute to the settlement from their own pockets even before Chubb expended the Policy limits.  Chubb rejected each proposal.

8

Ultimately, the mediation ended without a settlement. Still hopeful that Chubb would acknowledge and meet its coverage obligations, the Insureds agreed to continue discussions in a second mediation session.

25. After the November 10 mediation, Chubb requested additional information from the Insureds' counsel, including, for example, expected costs of continued litigation with Sheffield, an assessment of the case, the likely amount of an adverse judgment, and the settlement value of the case. The Insureds' counsel responded promptly with the information and continued to demand that Chubb allow the Insureds to utilize the remainder of the Policy to settle the case.

26. On November 12, 2004, the Insureds, by their counsel, wrote to Chubb, setting forth the history of Chubb's coverage positions, notifying Chubb that its actions constituted a breach of the policy, a breach of the covenant of good faith and fair dealing, and violated G.L. c. 93A and 176D and formally demanding that Chubb participate in the mediation in good faith and make the remaining Policy limits available to the Insureds to settle the Adversary Proceeding.

27. Chubb did not, however, agree to put its Policy limits on the table for the Insureds to settle the litigation. Nor did it agree to make any alternative, good faith proposal to settle the litigation. Instead, despite that it had claimed to have reserved its rights under the Policy (which it did not) and that it had no right to choose approve or discharge counsel in any event, and despite its own approval of the Insureds' chosen counsel more than a year before, rather than meet its obligations to its Insureds, on November 16, 2004, Chubb purported to discharge the Insureds' counsel. Chubb's meritless attempt to discharge the Insureds' chosen counsel was another in a series of bad faith actions taken to coerce the Insureds to forego their rightful coverage and settle the Adversary Proceeding entirely or largely on their own.

9

28.    Chubb followed this act by continuing to participate in settlement discussions and essentially cancelled the scheduled second mediation day and attempted to justify its wrongful and bad faith conduct by falsely claiming that the Insureds had refused to contribute to any settlement.    In its subsequent communications, Chubb told the Insureds' counsel that all communication directed to Chubb were to be addressed solely to Chubb's outside litigation counsel.

29.    Over the next weeks, the Insureds continued, through their counsel now in communication with Chubb's outside counsel, to insist that Chubb participate in settlement discussions and that it make the remainder of the Policy available for settlement.

30.    During this same time period, Sheffield indicated that it intended to seek leave to file a Second Amended Adversary Complaint, adding claims against Mr. Ackerman and Mr. Karol for "directors' liability" and a claim against Mr. Ackerman for "recipient's liability" relating to Sheffield's repurchase from Ackerman of certain option shares. The Insureds shared the draft Second Amended Adversary Complaint with Chubb and Chubb told the Insureds it had no objection to the Insureds assenting to Sheffield's request for leave to file the amendment.

31.    At the same time, the Insureds arranged with Sheffield and the mediator to reschedule the second mediation date.    Chubb indicated that it would participate in the mediation.    Ultimately, however, Chubb's "participation" in the settlement came down to its forcing the Insureds to choose between using the remainder of the Policy limits towards settling with Sheffield subject to Chubb's purported full reservation of rights – a reservation it had no lawful ability to ask for – and further litigation concerning Chubb's obligation to pay those amounts or accepting a significantly discounted amount of the remainder of the Policy for use

10

towards the settlement, funding a larger part of the settlement themselves and foregoing litigation with Chubb.

32.    The Insureds were forced to make this decision literally on their way out of town to attend the mediation in Oklahoma.  Given Chubb's bad faith and meritless attempts to discount its obligations under the Policy, and the fact that Chubb's actions had created a significant barrier to a settlement within or near the Policy limits, the Insureds had no choice but to attempt to settle the Adversary Proceeding using the remainder of the Policy and then to litigate with Chubb.  Even to make that possible, Chubb demanded that the Insureds enter into a written agreement, the "Interim Funding Agreement," before Chubb would be bound to advance the Policy limits even provisionally.

33.  On December 14, 2004, the Insureds and their counsel spent a long day with Sheffield, its counsel and the mediator attempting to settle the Oklahoma lawsuit.  Tainted by Chubb's bad faith actions at the November mediation, the Insureds' negotiations with Sheffield were extraordinarily difficult.  And, at the end of the day, while the Insureds reached a settlement with Sheffield, subject to approval by the Bankruptcy Court, as a result of Chubb's bad faith they were not able to settle within the remaining limits of the Policy.

34.    Before the settlement was finalized, Sheffield obtained leave to file and filed the Second Amended Adversary Complaint, adding Counts X (liability of directors for authorizing the repurchase of Ackerman's stock) and XI (liability of Ackerman for repurchase of stock).  These claims are further covered claims under the Policy.

35.    The Insureds have fully complied with all conditions contained in the Policy and relied upon the scope of coverage Chubb provided during the course of the Adversary Proceeding, statements made and approvals given by Chubb until recently, on its limited

11

reservation of rights, and its actions following the resolution of these limited issues, which were reserved.

36.    Chubb acted wrongfully and in bad faith in, without limitation, reversing its coverage position, denying coverage to HMK, denying coverage for seven of the nine counts of the Amended Complaint, denying coverage beyond defense costs for the remaining two claims, insisting upon allocation (which Chubb apparently also insists is retroactive despite that it never mentioned allocation for nearly two years) and in literally destroying the mediation efforts set up to settle the Adversary Proceeding. Chubb's actions poisoned the subsequent settlement talks between the Insureds and Sheffield, making it extraordinarily difficult for the Insureds even with the remaining Policy limits (subject to a full reservation of rights) to resolve the Oklahoma litigation and ultimately causing the Insureds to use their own funds above and beyond the Policy limits to settle with Sheffield.

37.    Chubb's wrongful and bad faith actions also have and continue to cause the Insureds to incur additional legal expenses to avoid now having to reimburse Chubb for the very coverage the Insureds paid for.

## Count I – Declaratory Judgment

38.    Plaintiffs allege and incorporate herein by reference Paragraphs 1 through 37 above in their entirety.

39.    Chubb refused to indemnify or provide insurance coverage to the Insureds as it is required to under the Policy and has instead agreed only provisionally to advance coverage subject to a full reservation of rights and a claim for reimbursement from the Insureds. Accordingly, there exists an actual case or controversy between the Insureds and Chubb.

40.    The Insureds are entitled to a judgment, pursuant to M.G.L. c. 231A, declaring that Chubb is obligated to indemnify the Insureds in the Adversary Proceeding and to reimburse the Insureds for their attorney's fees and costs incurred in connection with defending the Adversary Proceeding and thus that the Insureds are not required to reimburse any of the amounts advanced by Chubb.

## Count II – Breach of Contract

41.    Plaintiffs allege and incorporate herein by reference Paragraphs 1 through 40 above in their entirety.

42.    Chubb issued Policy No. 8122-2404 to HMK and thereby agreed to provide coverage for the Insureds during times relevant to this lawsuit.

43.    Chubb breached this insurance contract.

44.    As a result of Chubb's breach of contract, the Insureds have suffered and continue to suffer damages.

## Count III –Breach of Duty of Good Faith and Fair Dealing

45.    Plaintiffs allege and incorporate herein by reference Paragraphs 1 through 44 above in their entirety.

46.    As parties to a contract with the Insureds, Chubb owes to the Insureds a duty of good faith and fair dealing.

47.    Chubb has breached this duty in its failure to meet their obligations under the Policy at issue.

48.    As a result of Chubb's breach of this duty, the Insureds have suffered damages, and continue to suffer damages, in an amount to be proved at trial.

13

**Count IV - Violation of Massachusetts General Laws Chapters 93A, § 9 and 176D**

49.      Plaintiffs allege and incorporate herein by reference Paragraphs 1 through 46 above in their entirety.

50.      On November 12, 2004, the Insureds sent a demand letter to Chubb consistent with the requirements of G.L. c. 93A, § 9.

51.      Chubb did respond with a reasonable settlement within thirty (30) days.

52.      Chubb is engaged in trade or commerce within the meaning of M.G.L. c. 93A.

53.      Chubb's acts and omissions as set forth above constitute unfair and/or deceptive acts or practices violative of M.G.L. c. 93A, §§ 2 and 9, and c. 176D.

54.      Chubb's unfair and/or deceptive acts and practices were committed knowingly and willfully, and constitute bad faith violations of M.G.L. c. 93A and c. 176D.

55.      In particular, and without limitation, Chubb has committed the following unfair and/or deceptive claims, coverage and settlement practices:

a)      refusing to provide coverage to the Insureds for claims for which coverage is reasonably clear from the Policy at issue, as well as from the four corners of the First Amended Adversary Complaint in the Adversary Proceeding;

b)      refusing to settle the Adversary Proceeding case within the limits of the Policy upon demand by the Insureds;

c)      reversing its coverage position in bad faith and after the Insureds had shaped a significant portion of their defense of the case in reliance on the coverage provided by Chubb.

14

56.    As a result of the acts and practices described above, each of which was committed knowingly and willfully, the Insureds have sustained damages and will continue to sustain damages.

<u>**Count V - Violation of Massachusetts General Laws Chapters 93A, § 11**</u>

57.    Plaintiffs allege and incorporate herein by reference Paragraphs 1 through 56 above in their entirety.

58.    At all times relevant hereto, Chubb and HMK were engaged in trade or commerce within the Commonwealth of Massachusetts.

59.    Chubb's actions constitute unfair and deceptive acts or practices within the meaning of G.L. c. 93A.

60.    Chubb's unfair or deceptive acts or practices occurred during the conduct of trade or commerce within the meaning of G.L. c. 93A.

61.    As a result of Chubb's acts, the Insureds suffered injury, including but not limited to monetary damages.

62.    Chubb's conduct was knowing and willful, entitling the Insureds to double or treble damages and attorneys' fees under G.L. c. 93A.

**WHEREFORE,** HMK Enterprises, Inc., Robert Ackerman and Steven Karol request that this Court grant the following relief:

(i)    enter judgment on Count One in favor of Plaintiffs and against Defendants declaring that that Chubb is obligated to indemnify Plaintiffs in the Adversary Proceeding and reimburse them their attorney's fees and costs incurred in connection with the defense of the Adversary Proceeding, and thus that the Insureds are not required to reimburse any amounts to Chubb.

15

(ii)     enter judgment in the Plaintiffs' favor on Counts II through V of the Complaint,

and award the Plaintiffs damages in an amount to be proven at trial;

(iii)    award Plaintiffs' double or treble damages and their attorneys' fees and costs in

        pursuing this litigation; and

(iv)    grant such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiffs demand a jury trial as to all claims and issues so triable.

Respectfully submitted,

HMK ENTERPRISES, INC., ROBERT
ACKERMAN and STEVEN KAROL,

By their attorneys,

Howard M. Cooper (BBO #543842)
Heidi A. Nadel (BBO#641617)
TODD & WELD LLP
28 State Street
Boston, MA  02110

DATED:  January 12, 2005

16

CERTIFICATE OF SERVICE
I hereby certify that a true copy of the above document
was served upon the attorney of record for each other
party by (hand) (mail) on 1/12/05