IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| HMK ENTERPRISES, INC.,<br>ROBERT ACKERMAN and<br>STEVEN KAROL., | )<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Civil Action No. 04-12688-MLW |
| THE CHUBB CORPORATION,<br>FEDERAL INSURANCE COMPANY, and<br>CHUBB & SON, INC. | )<br>)<br>)<br>) |
| Defendant. | )<br>) |

### ANSWER AND COUNTERCLAIM

Defendant Federal Insurance Company ("Federal"), 1/ by the undersigned counsel, responds to the Complaint of plaintiffs HMK Enterprises ("HMK"), Robert Ackerman ("Ackerman") and Steven Karol ("Karol"), and Federal asserts a Counterclaim as follows:

### FIRST DEFENSE

The Complaint fails to state a claim upon which relief may be granted.

### SECOND DEFENSE

With respect to the allegations contained in the separately numbered paragraphs of the Complaint, Federal responds as follows:

1.    Federal admits the allegations contained in paragraph 1 of the Complaint.

2.    Federal admits the allegations contained in the first sentence of paragraph 2 of the Complaint. With respect to the allegations contained in the second sentence of paragraph 2 of the Complaint, Federal states that it has been advised by the Plaintiffs that Mr. Ackerman was a

---

1/    Defendants The Chubb Corporation and Chubb & Son Inc. do not answer at this time, but have instead filed a consent motion for an extension of time to move or respond to the complaint up to and including February 14, 2005.

director of Sheffield Steel, and has further been advised by the Plaintiffs that Sheffield Steel was a former subsidiary of HMK. However, Federal is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in second sentence of paragraph 2 of the Complaint, or to verify that the Plaintiffs have in fact advised correctly as to the status of Mr. Ackerman and Sheffield Steel.

3.    Federal admits the allegations contained in the first sentence of paragraph 3 of the Complaint. With respect to the allegations contained in the second sentence of paragraph 3 of the Complaint, Federal states that it has been advised by the Plaintiffs that Mr. Karol was a director of Sheffield Steel, and has further been advised by the Plaintiffs that Sheffield Steel was a former subsidiary of HMK. However, Federal is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in second sentence of paragraph 3 of the Complaint, or to verify that the Plaintiffs have in fact advised correctly as to the status of Mr. Karol and Sheffield Steel.

4.    Federal admits the allegation contained in paragraph 4 of the Complaint that The Chubb Corporation is incorporated under the laws of New Jersey, and denies the remaining allegations contained in paragraph 4 of the Complaint.

5.    Federal admits the allegations contained in the first sentence of paragraph 5 of the Complaint. With respect to the allegations contained in the second sentence of paragraph 5 of the Complaint, Federal admits that it is a wholly-owned subsidiary of The Chubb Corporation, but denies the remaining allegations in that sentence.

6.    With regard to the allegations contained in the first sentence of paragraph 6 of the Complaint, Federal admits that Chubb & Son Inc. is a New York corporation with its principal place of business in the state of New Jersey, but denies the remaining allegations. Federal denies the allegations contained in the second sentence of paragraph 6 of the Complaint. The third sentence of paragraph 6 the Complaint contains no allegations, but is merely a description of the manner in which Plaintiffs intend to refer to the Defendants throughout the Complaint; therefore, no response is required.

7.      Federal denies the allegation in the first sentence of paragraph 7 of the Complaint that "Chubb" issued the Policy No. 8122-2404 (the "Policy"); the Policy was issued by Federal and Federal alone, and neither The Chubb Corporation nor Chubb & Son Inc. are parties to that contract. Federal further state that the Policy speaks for itself, and therefore denies the remaining allegations in paragraph 7 of the Complaint as stated.

8-10.   Federal is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraphs 8 through 10 of the Complaint.

11.     With respect to the allegations contained in paragraph 11 of the Complaint, Federal states that, upon information and belief, an adversary proceeding styled Sheffield Steel Corporation v. HMK Enterprises, Inc. et al, No. 03-0134 (the "Underlying Action) was commenced against HMK, Ackerman and Karol on or about July 10, 2003. Federal further states that the Complaint filed in the Underlying Action speaks for itself, and therefore denies the allegations contained in paragraph 11 of the Complaint as stated.

12.     Federal denies the allegations contained in paragraph 12 of the Complaint. Federal further states that the Insureds' counsel notified Federal of the Underlying Action and requested coverage under the Policy, but denies that Insureds were entitled to such coverage.

13.     Federal admits the allegations contained in the first sentence of paragraph 13 of the Complaint, except that it was Federal, and not "Chubb" (as that term is used by the Plaintiffs in their Complaint) that issued the Policy and that therefore issued a position in connection with the Plaintiff's initial request for coverage. Federal denies the remaining allegations in paragraph 13 of the Complaint, except the allegation that Federal agreed to withdraw its denial on the basis of the "insured vs. insured" exclusion.

14.     Federal denies the allegations contained in paragraph 14 of the Complaint. Federal further states that the Insureds and Federal exchanged correspondence concerning coverage for the Underlying Action, that this coverage correspondence speaks for itself.

15.     Federal denies the allegations contained in paragraph 15 of the Complaint. Federal further states that it was Federal, not "Chubb," that issued the Policy, and that Federal

3

issued correspondence that set forth its coverage position in this matter. This coverage correspondence speaks for itself.

16.     With respect to the allegations contained in paragraph 16 of the Complaint, Federal states that, upon information and belief, a First Amended Adversary Complaint was filed. Federal further states that this First Amended Complaint speaks for itself, and therefore denies the allegations contained in paragraph 16 of the Complaint as stated.

17.     With regard to the allegations contained in the first two sentences of paragraph 17 of the Complaint, Federal admits that Federal received a copy of the Amended Complaint, and denies the remaining allegations. Federal denies the allegation in the third sentence of paragraph 17 of the Complaint that "Chubb" gave its "prior approval" to the Plaintiffs to represent the "availability" of the Policy limits or their "applicability to the claims in the Complaint." Federal is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in the third sentence of paragraph 17 of the Complaint.

18.     Federal denies the allegations contained in the first sentence of paragraph 18 of the Complaint. Federal admits the remaining allegations contained in paragraph 18 of the Complaint with regard to Federal, and further avers that such approval was subject to a reservation of rights, and denies the remaining allegations.

19.     Federal is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the first sentence of paragraph 19 of the Complaint. With respect to the allegations contained in the second sentence of paragraph 19 of the Complaint, Federal admits that it was advised of the mediation and that HMK was advised that a new examiner would be handling the claim, and denies the remaining allegations. With respect to the allegations contained in the third sentence of paragraph 19 of the Complaint, Federal admits that there was a mediation scheduled for November 10, 2004 and that Federal was aware that its Insureds would be attending, but denies the remaining allegations in that sentence. Federal denies the allegations contained in the fourth sentence of paragraph 19 of the Complaint. With respect to the allegations contained in the fifth sentence of paragraph 19 of the Complaint,

4

Federal admits that its Insureds' counsel coordinated scheduling with Federal and local counsel, and denies the remaining allegations.

20.    With respect to the allegations contained in the first sentence of paragraph 20 of the Complaint, Federal admits that it requested a copy of the Amended Complaint, but denies the remaining allegations of that sentence. Federal denies the allegations contained in the second sentence of paragraph 20 of the Complaint.

21.    Federal denies the allegations contained in paragraph 21 of the Complaint.

22.    Federal denies the allegations contained in paragraph 22 of the Complaint.

23.    Federal admits the allegations contained in the first sentence of paragraph 23 of the Complaint. Federal is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the second sentence of paragraph 23 of the Complaint. Federal denies the allegations contained in the third and fourth sentences of paragraph 23 of the Complaint.

24.    With respect to the allegations contained in paragraph 24 of the Complaint, Federal admits that the November 10, 2004 mediation ended without a settlement, and that the Insureds agreed to hold a second mediation session. Federal also admits the allegation that the Insureds demanded the limits of the Policy, but denies that the Insureds were entitled to such coverage. Federal denies all remaining allegations contained in paragraph 24 of the Complaint.

25.    With respect to the allegations contained in paragraph 25 of the Complaint, Federal admits that it requested certain additional and critical information about the Underlying Action that the Insureds had failed to provide despite repeated requests. Federal denies all remaining allegations contained in paragraph 25 of the Complaint.

26.    Federal admits that the Insureds' counsel wrote a letter dated November 12, 2004 that purported to outline the Insureds' views on coverage. This coverage correspondence speaks for itself, and therefore Federal denies the allegations contained in paragraph 26 of the Complaint as stated.

27.    Federal denies the allegations contained in paragraph 27 of the Complaint.

\\DC - 57212/0502 - 2052202 v2

28.    With respect to the allegations contained in paragraph 28 of the Complaint, Federal admits that it instructed Insureds' outside counsel to communicate with Federal's coverage counsel regarding this matter, and Federal admits that it agreed to continue to participate in the settlement discussions. Federal denies all remaining allegations in paragraph 28 of the Complaint.

29.    With respect to the allegations contained in paragraph 29 of the Complaint, Federal states that the Insureds' counsel requested that Federal participate in the settlement and make a contribution. Federal denies the remaining allegations as stated.

30.    Federal is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the first sentence of paragraph 30 of the Complaint. With regard to the allegations contained in the second sentence of paragraph 30 of the Complaint, Federal states that, based on the advice of HMK's outside counsel that a motion to amend the Complaint would certainly be granted and should not be opposed, Federal did not instruct HMK's counsel to object to the filing.

31.    Federal is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the first sentence of paragraph 31 of the Complaint. With respect to the allegations contained in the second sentence of paragraph 31 of the Complaint, Federal states that Federal, not "Chubb," agreed to participate in that mediation, and therefore denies the allegations as stated. Federal denies the allegations contained in the third sentence of paragraph 31 of the Complaint.

32.    With respect to the allegations contained in paragraph 32 of the Complaint, Federal admits that the Insureds voluntarily agreed to enter into an Interim Funding Agreement. Federal denies all remaining allegations contained in paragraph 32 of the Complaint.

33.    With respect to the allegations contained in paragraph 33 of the Complaint, Federal admits that there was a mediation on December 14, 2004, and that the Insureds reached a settlement at that mediation session that is subject to the Bankruptcy Court's approval. Federal denies all remaining allegations contained in paragraph 33 of the Complaint.

WDC - 57212/0502 - 2052202 v2

34.     Federal is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the first sentence of paragraph 34 of the Complaint. Federal denies the allegations contained in the second sentence of paragraph 34 of the Complaint.

35-37. Federal denies the allegations contained in paragraphs 35 through 37 of the Complaint.

### COUNT I – DECLARATORY JUDGMENT

38.     Federal repeats and realleges the responses to the allegations contained in paragraphs 1 through 37 of the Complaint as if fully set forth herein.

39-40. Federal denies the allegations contained in paragraphs 39 and 40 of the Complaint.

### COUNT II – BREACH OF CONTRACT

41.     Federal repeats and realleges the responses to the allegations contained in paragraphs 1 through 40 of the Complaint as if fully set forth herein.

42-44. Federal denies the allegations contained in paragraphs 42 through 44 of the Complaint.

### COUNT III – BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

45.     Federal repeats and realleges the responses to the allegations contained in paragraphs 1 through 44 of the Complaint as if fully set forth herein.

46-48   Federal denies the allegations contained in paragraphs 46 through 48 of the Complaint.

### COUNT IV -- VIOLATION OF MASSACHUSETTS GENERAL LAWS CHAPTERS 93A, § 9 AND 176D

49.     Federal repeats and realleges the responses to the allegations contained in paragraphs 1 through 48 of the Complaint as if fully set forth herein.

50.     Federal denies the allegations contained in paragraph 50 of the Complaint.

51.     With respect to the allegations contained in paragraph 51 of the Complaint, Federal states that Federal, not "Chubb," responded to the November 12, 2004 letter. Federal

7

admits, as is alleged in paragraph 51 of the Complaint, that Federal "did respond with a reasonable settlement within thirty (30) days."

52.     Paragraph 52 of the Complaint states legal conclusions that do not require a response.  To the extent that a response is nonetheless deemed required, Federal denies the allegations contained in paragraph 52 of the Complaint.

53-56.  Federal denies the allegations contained in paragraphs 53 through 56 of the Complaint.

## COUNT V – VIOLATION OF MASSACHUSETTS GENERAL LAWS CHAPTERS 93A, § 11

57.     Federal repeats and realleges the responses to the allegations contained in paragraphs 1 through 57 of the Complaint as if fully set forth herein.

58.     Federal denies the allegation that "Chubb" was engaged in trade or commerce in the state of Massachusetts.  Federal is without knowledge or information concerning whether HMK was engaged in trade or commerce in the state of Massachusetts during the relevant time period.

59-62  Federal denies the allegations contained in paragraphs 59 through 62 of the Complaint.

63.     All of the allegations of the Complaint which have not been admitted, denied, qualified or otherwise responded to are hereby denied, including all allegations concerning damages and other relief.

### THRID DEFENSE

Coverage is barred because the damages sought by the plaintiff in the Underlying Action do not constitute a "**Loss**" and are uninsurable as a matter of public policy.

### FOURTH DEFENSE

Coverage for the Underlying Action is barred by the exclusion in the Policy for claims that are "based upon, arising from, or in consequence of such **Insured Person** having gained in

fact any personal profit, remuneration or advantage to which such **Insured Person** was not legally entitled."

### FIFTH DEFENSE

Coverage for the Underlying Action is barred by the exclusion in the Policy for claims that are "based upon, arising from, or in consequence of an **Insured Organization** having gained in fact any profit or advantage to which such **Insured Organization** was not legally entitled."

### SIXTH DEFENSE

Coverage is barred because the Underlying Action is not based upon "**Wrongful Acts**" committed by the Insureds in an "**Insured Capacity**."

### SEVENTH DEFENSE

Coverage is barred pursuant to the exclusion in the Policy for claims that are "based upon, arising from, or in consequence of a public offering, solicitation, distribution, or issuance of stock, whether or not a prospectus has been issued."

### EIGHTH DEFENSE

Coverage is barred to the extent that the Insured(s) made material misrepresentations in the Application for the Policy.

### NINTH DEFENSE

Coverage is barred to the extent that the Insureds breached the terms and conditions of the Policy.

### TENTH DEFENSE

Coverage is barred because the Insureds breached the duty to cooperate.

### ELEVENTH DEFENSE

Coverage is barred and/or limited pursuant to the "other insurance" clause of the Policy.

### TWELFTH DEFENSE

Federal is entitled to reimbursement for all amounts paid pursuant to the Interim Funding Agreement.

\\DC - 57212/0502 - 2052202 v2

### THIRTEENTH DEFENSE

The Plaintiffs' claims are barred by the doctrines of waiver and estoppel.

### FOURTEENTH DEFENSE

Chubb & Son Inc. and The Chubb Corporation have no coverage obligations under the Policy because they were not parties to that contract.

### FIFTEENTH DEFENSE

This Court lacks personal jurisdiction over Chubb & Son Inc. and The Chubb Corporation.

### SIXTEENTH DEFENSE

Chubb & Son Inc. and The Chubb Corporation were not properly served.

### SEVENTEENTH DEFENSE

Coverage is barred pursuant to the exclusion in the Policy for "**Loss** on account of any **Claim** made against an **Insured Organization** . . . based upon, arising from, or in consequence of actual or alleged breach of a written or oral contract, agreement, warranty or guarantee . . ."

### EIGHTEENTH DEFENSE

The plaintiffs' claims are barred by M.G.L. c. 175 § 47 (Sixth) (b).

### NINETEENTH DEFENSE

The Policy is subject to and limited by all of its terms, conditions, definitions, limits of liability, retentions and exclusions that operate to bar or limit coverage for some or all of the amounts for which the plaintiffs seek coverage, including, to the extent incorporated therein, the terms, exclusions, conditions and limitations of any underlying policies.  Federal reserves the right to raise affirmatively other terms, conditions, definitions, and exclusions contained in the Policy as defenses to coverage as appropriate.

WHEREFORE, having fully responded to the Complaint, Federal respectfully requests that the Complaint be dismissed, that the Court enter judgment in favor of Federal, that Federal be awarded its costs and attorney's fees, and that the Court grant such other and further relief as it may deem just.

\\\DC - 57212/0502 - 2052202 v2

## COUNTERCLAIM OF DEFENDANT FEDERAL INSURANCE COMPANY

Defendant Federal Insurance Company hereby sues Plaintiffs HMK Enterprises, Robert Ackerman and Steven Karol and alleges as follows:

### PARTIES

1.      Plaintiff HMK Enterprises ("HMK") is a corporation organized and incorporated under the laws of the state of Delaware, and has its principal place of business now and at the time this action was commenced in Waltham, Massachusetts.

2.      Plaintiff Robert Ackerman ("Ackerman") is an individual resident and citizen of the Commonwealth of Massachusetts.

3.      Plaintiff Steven Karol ("Karol") is an individual resident and citizen of the Commonwealth of Massachusetts.

4.      Defendant Federal Insurance Company ("Federal") is a corporation organized and incorporated under the laws of the State of Indiana, and has its principal place of business now and at the time this action was commenced in New Jersey.

### FACTS

#### A.      The Policy

5.      Effective September 1, 2002, Federal issued Executive Protection Policy No. 8122-2404 (the "Policy") to HMK for the Policy Period September 1, 2002 to September 1, 2003. The Policy had a $5 million Limit of Liability, and was subject to a $100,000 deductible.

6.      Insuring Clauses 1 and 2 of the Policy provide that Federal will pay on behalf of the "**Insured Persons**" all "**Loss**" for which the "**Insured Person**" becomes legally obligated to pay (and under Insuring Clause 1 is not indemnified by the "**Insured Organization**," or under Insuring Clause 2 for which the "**Insured Organization**" grants indemnification to the "**Insured**

11

**Person**") on account of any "**Claim**" first made against the "**Insured Person**" during the "**Policy Period**" for a "**Wrongful Act**" committed by such "**Insured Person**" during or before the "**Policy Period**."

7.    Insuring Clause 3 of the Policy provided that Federal will pay on behalf of the "**Insured Organi**zation" all "**Loss**" for which it becomes legally obligated to pay on account of any "**Claim**" first made against it during the "**Policy Period**" for a "**Wrongful Act**."

8.    The term "**Insured Person**" was defined to mean "[a]ny person who has been, now is, or shall become a duly elected or appointed officer of the **Insured Organization**." The Policy further provided that the term "**Insured Person** also means, for the purposes of coverage under Insuring Clause 3, any **Insured Organization**."

9.    The term "**Insured Organization**" was defined to mean HMK and its subsidiaries.

10.    For the purposes of coverage under Insuring Clauses 1 or 2, the term "**Wrongful Act**" was defined to mean "any error, misstatement, misleading statement, act or omission neglect or breach of duty committed, attempted, or allegedly committed or attempted, by any **Insured Person**, individually or otherwise, in his **Insured Capacity**, or any matter claimed against him solely by reason of his serving in such **Insured Capacity**."

11.    For the purposes of coverage under Insuring Clause 3, the term "**Wrongful Act**" was defined to mean "any error, misstatement, misleading statement, act or omission neglect or breach of duty committed, attempted, or allegedly committed or attempted, by any **Insured Person**, individually or otherwise, in his **Insured Capacity**, or any matter claimed against him solely by reason of his serving in such **Insured Capacity,** or any **Insured Organization**."

12.    The term "**Insured Capacity**" was defined to mean the position held by the "**Insured Person**" as a director or officer of an "**Insured Organization**."

12

13.    The term "**Loss**" was defined to mean, in relevant part, "the total amount which any **Insured Person** becomes legally obligated to pay on account of each **Claim** and for all **Claims** in each **Policy Period** . . . for **Wrongful Acts** for which coverage applies, including, but not limited to, damages, judgments, settlements, costs and **Defense Costs**." However, the term "**Loss**" "does not include . . . matters uninsurable under the law applicable to this coverage. . ."

14.    The Policy excluded coverage for, among other things, "**Loss** on account of any **Claim** made against any **Insured Person** . . . based upon, arising from, or in consequence of such **Insured Person** having gained in fact any personal profit, remuneration or advantage to which such **Insured Person** was not legally entitled." The Policy also excluded coverage for "**Loss** on account of any **Claim** made against an **Insured Organization** . . . based upon, arising from, or in consequence of an **Insured Organization** having gained in fact any profit or advantage to which such **Insured Organization** was not legally entitled."

15.    The Policy also contained an exclusion for "**Loss** on account of any **Claim** made against an **Insured Organization** . . . based upon, arising from, or in consequence of actual or alleged breach of a written or oral contract, agreement, warranty or guarantee . . ."

16.    The Policy also had an allocation provision, which provided that if both covered "**Loss**" and loss not covered by the Policy is incurred, either because a "**Claim**" involves both covered or uncovered matters, or is made against both "**Insured Persons**" and others (including an **Insured Organization**), then the "**Insured**" and Federal were to "use their best efforts to agree upon a fair and proper allocation of such amount between covered **Loss** and uncovered loss."

13

**B.**    **The Underlying Action**

17.    Upon information and belief, plaintiffs Karol and Ackerman were at one time directors of Sheffield Steel Corporation ("Sheffield"), a Delaware corporation which had its principal place of business in Oklahoma.  Also upon information and belief, prior to filing for bankruptcy (discussed below), Sheffield was a subsidiary of HMK.  In addition to being a director of Sheffield, Karol was a fifty-percent owner of HMK.

18.    On December 7, 2001, Sheffield filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Oklahoma.

19.    On July 26, 2002, the Bankruptcy Court confirmed the "Second Amended and Restated Joint Plan of Reorganization" (the "Plan").  The Plan became effective on August 14, 2002.

20.    After the Plan was confirmed, on July 11, 2003, Reorganized Sheffield commenced an adversary proceeding against HMK, Karol and Ackerman in Bankruptcy Court for the Northern District of Oklahoma, such adversary proceeding styled Sheffield Steel Corporation v. HMK Enterprises, Inc. et al, No. 03-0134 (the "Underlying Action).

21.    The plaintiff in the Underlying Action sought the disgorgement of nearly $20 million in allegedly unlawful dividends and other allegedly improper payments made to HMK, Karol and Ackerman.

22.    Specifically, the Underlying Action Complaint alleged that Karol and Ackerman had caused Sheffield to make some $12.5 million in dividend payments to its shareholders in 1997 and 1999, at a time when Sheffield was insolvent and therefore not authorized to make

14

dividend payments under Delaware law. The Complaint also alleged that such payments constituted a violation of the Oklahoma Uniform Fraudulent Transfer Act.

23.    More than 90 percent of the dividend payments went to HMK, Ackerman and Karol. Nearly $11.3 million in dividend payments went to HMK, Sheffield's largest shareholder. Ackerman received $181,828.90, and Karol received $36,690.13. Thus, together HMK, Ackerman and Karol received approximately $11.5 million of the $12.5 million in dividend payments.

24.    The Underlying Action plaintiff also sought the disgorgement of $6,822,707 in stock redemption payments made to Ackerman. Like the dividend payments, the stock redemption payments were allegedly made at a time when Sheffield was insolvent, in violation of Delaware law as well as in violation of the Oklahoma Uniform Fraudulent Transfer Act. The Underlying Action Complaint also alleged that Sheffield did not receive fair and reasonable value in the stock redemption transactions with Ackerman.

25.    In addition, the Underlying Action Complaint alleged that HMK owed $500,000 to Sheffield, and that HMK refused to repay the amount owed despite a demand for payment. Thus, the Underlying Action plaintiff sought the return of the $500,000 allegedly owed.

26.    The Underlying Action Complaint is not based solely on "**Wrongful Acts**" committed by HMK, Ackerman and Karol in an "**Insured Capacity.**" Rather, the Underlying Action Complaint alleges counts against HMK as a shareholder of Sheffield stock and recipient of the allegedly unlawful dividend payments, and similarly alleges counts against Karol and Ackerman, not in their capacity as directors of Sheffield, but rather in their individual capacities as owners of Sheffield stock who received illegal and improper benefits and payments

15

### C.    Federal Issues a Reservation of Rights

27.    Federal agreed to provide coverage for the "**Defense Costs**" incurred by Ackerman and Karol in the Underlying Action, subject to a full reservation of rights, including the right to seek reimbursement of any amounts paid in the event that it is determined that coverage for the Underlying Action is barred.

28.    In agreeing to pay **Defense Costs**, Federal also informed HMK, Karol and Ackerman (collectively, the "Insureds") that coverage might be barred for the Underlying Action pursuant to a number of provisions, terms and exclusions in the Policy.

29.    In particular, Federal advised the Insureds that the Underlying Action Complaint did not allege that they had committed "**Wrongful Acts**" solely in an "**Insured Capacity**," but instead alleged receipt by them of payments made to them in their capacity as shareholders. Federal informed the Insureds that the Policy would not provide coverage for the Underlying Action to the extent that it was based upon actions taken in an uninsured capacity.

30.    Federal also advised the Insureds about the applicability of certain Policy exclusions.  Specifically, Federal notified the Insureds that coverage appeared to be barred pursuant to exclusion in the Policy for claims "based upon, arising from, or in consequence of such **Insured Person** having gained in fact any personal profit, remuneration or advantage to which such **Insured Person** was not legally entitled," as well as the exclusion for claims "based upon, arising from, or in consequence of an **Insured Organization** having gained in fact any profit or advantage to which such **Insured Organization** was not legally entitled." In that regard, Federal noted that these exclusions would apply because the gravaman of the Underlying Action was that HMK, Karol and Ackerman had received unlawful dividends and other payments to which they were not legally entitled.

16

31.    Federal also explained that Sheffield sought the disgorgement of illegal and improper payments, and explained that the disgorgement of such ill-gotten gain would not constitute an insurable "**Loss**."

32.    Federal further advised that the claim against HMK for failure to pay the $500,000 due and payable to Sheffield appeared to be barred pursuant to the exclusion for "**Loss on account of any Claim made against an Insured Organization** . . . based upon, arising from, or in consequence of actual or alleged breach of a written or oral contract, agreement, warranty or guarantee . . ."

33.    In addition to the coverage issues enumerated above, Federal advised the Insureds as to the applicability of several other coverage exclusions and limitations.

34.    In light of these coverage defenses and limitations, Federal invoked the allocation provision in the Policy, which, as noted above, required that the parties "use their best efforts to agree upon a fair and proper allocation . . . between covered **Loss** and uncovered loss." Disregarding their contractual obligations, the Insureds refused to even discuss an allocation of coverage and uncovered loss, much less "use their best efforts" to agree to such an allocation.

35.    To date, Federal has paid approximately $500,000 in "**Defense Costs**" incurred in connection with the Underlying Action.

**D.    The Settlement and the Interim Funding Agreement**

36.    The Insureds reached a settlement with the Underlying Action plaintiff on or about December 14, 2004. A Memorandum of Understanding reflecting the terms of that settlement was signed on that date. A Settlement Agreement was then signed on January 3, 2005. The Settlement Agreement is subject to the approval of the Bankruptcy Court.

17

37.     On January 5, 2005, Federal and the Insureds signed an Interim Funding Agreement, under which Federal would advance to the Insureds a certain amount to fund the settlement of the Underlying Action.  In particular, the parties agreed that Federal would advance to the Insureds up to the total amount of $4.5 million toward the settlement of the Underlying Action, not exceeding the remaining Limit of Liability of the Policy, which has been partially exhausted by the payment of **"Defense Costs."**   Said payment shall hereinafter be referred to as the "Advance Payment."

38.     Pursuant to the terms of the Interim Funding Agreement, the parties specifically agreed that Federal had that the right to reimbursement from the Insureds of all or a part of the Advance Payment "if it is judicially and finally determined that Federal is not required to pay those amounts."

39.     The Interim Funding Agreement further states that the "Insureds agree that Federal's entry into this Agreement and its payment of part of the Settlement [of the Underlying Action], shall not in any way waive or otherwise adversely affect any of Federal's rights at law, in equity, or under the Policy, including its rights to dispute or denies coverage (or any other obligation to pay) for all or part of the aforementioned payment."

40.     In addition, the Interim Funding Agreement provided that "if it is determined by final decision of a tribunal having jurisdiction hereof that Federal is not required to pay . . . the amounts paid by Federal in connection with the Settlement (or any part of them), then the Insureds shall be jointly and severally liable for, and shall repay to Federal, any such part of the sums advanced by Federal hereunder which the tribunal determines Federal was not required to pay."

18

41.     The Interim Funding Agreement further stated that "[i]t is understood and agreed that the undersigned has entered into this Agreement upon the legal advice of their respective counsel of choice and that the terms of this Agreement are fully understood and voluntarily accepted."

## COUNT I

(Declaratory Judgment – Reimbursement\Recoupment )

42.     The foregoing allegations are realleged and incorporated by reference herein.

43.     A justiciable controversy exists between Federal on the one hand and HMK, Ackerman and Karol on the other hand, concerning Federal's right to reimbursement for amounts that Federal has or will advance to fund the Underlying Action settlement pursuant to the terms of the Interim Funding Agreement.

44.     Entry of a declaratory judgment is necessary and appropriate to avoid the risks and uncertainty arising out of the above-described controversy.

45.     Federal is entitled to a judgment declaring that Federal is entitled to full reimbursement from HMK, Ackerman and Karol of the entire Advance Payment pursuant to the terms of the Interim Funding Agreement.  In the alternative, Federal is entitled to a judgment declaring that Federal is entitled to a partial reimbursement from HMK, Ackerman and Karol of the Advance Payment, and declaring the amount of reimbursement to which Federal is entitled.

46.     As indicated above, coverage for the Underlying Action is barred pursuant to certain terms, conditions, limitations and exclusions of the Policy.  The Advance Payment therefore will fund the settlement of a claim that is not covered by the Policy.  Thus, HMK, Ackerman and Karol will be unjustly enriched by the Advance Payment, because they will be receiving coverage for which they did not pay a premium.

19

47.     Specifically, coverage for the settlement of the Underlying Action is barred pursuant to the exclusion in the Policy for claims that are "based upon, arising from, or in consequence of such **Insured Person** having gained in fact any personal profit, remuneration or advantage to which such **Insured Person** was not legally entitled," as well as the exclusion for claims "based upon, arising from, or in consequence of an **Insured Organization** having gained in fact any profit or advantage to which such **Insured Organization** was not legally entitled." These exclusions apply to bar coverage for the settlement of the Underlying Action in its entirety, because the plaintiff in the Underlying Action sought the disgorgement of unlawful dividends and other improper payments that the Insureds had received but were not legally entitled to.

48.     In addition, there is no coverage for the settlement of the Underlying Action, because the damages sought constituted the disgorgement of ill-gotten gain. The return of such alleged ill –gotten gain does not constitute an insurable "**Loss**," and is not insurable as a matter of public policy. Moreover, the Policy expressly states that the term "**Loss**" does not include "matters uninsurable under the law applicable to this coverage."

49.     Coverage is also barred, at least as to the claim against HMK for failure to pay the $500,000 due and payable to Sheffield, pursuant to the exclusion for "**Loss** on account of any **Claim** made against an **Insured Organization** . . . based upon, arising from, or in consequence of actual or alleged breach of a written or oral contract, agreement, warranty or guarantee."

50.     Coverage is also barred because the Underlying Action is not based on "**Wrongful Acts**" committed by HMK, Ackerman and Karol solely in an "**Insured Capacity**," but is instead based upon their conduct and receipt of improper and unlawful benefits as shareholders.

20

51.    Because the settlement of the Underlying Action is excluded from coverage, Federal is entitled to complete reimbursement of the entire Advance Payment.

52.    In the alternative, if coverage exists for some part of the Advance Payment, Federal is entitled to a partial reimbursement of the Advance Payment. The allocation provision in the Policy requires that there be an allocation when a **"Claim"** includes both covered **"Loss"** and non-covered loss. The Interim Funding Agreement similarly provides that Federal is entitled to reimbursement of at least "a part" of the Advance Payment "if it is judicially and finally determined that Federal is not required to pay those amounts (or such part)."

53.    Therefore, Federal is entitled to a judgment (1) declaring that Federal is entitled to full reimbursement from HMK, Ackerman and Karol of the entire Advance Payment pursuant to the terms of the Interim Funding Agreement; and (2) awarding money damages against HMK, Ackerman and Karol in the amount of $4.5 million, plus applicable interest. In the alternative, Federal is entitled to a judgment (1) declaring that Federal is entitled to a partial reimbursement from HMK, Ackerman and Karol of the Advance Payment, and declaring the amount of reimbursement to which Federal is entitled; and (2) awarding money damages against HMK, Ackerman and Karol in that amount, plus applicable interest.

WHEREFORE, Defendant Federal Insurance Company respectfully requests that the Court enter a judgment declaring the rights and awarding the damages set forth herein, awarding Defendant its costs and attorney's fees and granting such other and further relief as the Court may deem just.

21

Dated:  January 31, 2005                    Respectfully submitted,

                                By:    /s/ Lee M. Holland
                                       Stephen J. Abarbanel BBO # 010100
                                       Lee M. Holland BBO # 650617
                                       ROBINSON & COLE L.L.P.
                                       One Boston Place
                                       Boston, MA 02108-4404
                                       (617) 557-5938
                                       Fax (617) 557-5999

                                       Jonathan A. Constine
                                       Douglas S. Crosno
                                       HOGAN & HARTSON, L.L.P.
                                       555 13th Street, N.W.
                                       Washington, DC 20004
                                       Telephone: (202) 637-5870
                                       Facsimile:  (202) 637-5910

                                       Attorneys for Defendants
                                       Federal Insurance Company, Chubb & Son
                                       Inc., and The Chubb Corporation

\\\DC - 57212/0502 - 2052202 v2

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing was furnished on this 31st day of January, 2005 by U.S. Mail, first class postage prepaid, to the following attorneys for the plaintiffs in this action:

Howard M. Cooper
Kevin T. Peters
Heidi A. Nadel
Todd & Weld, LLP
28 State Street
Boston, MA 02110


/s/ Lee M. Holland
Lee M. Holland

23